USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/9/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

**NETWORK ENTERPRISES, INC.,**            :

                    Plaintiff,               :

      -against-                           :       01 Civ. 11765-CSH

**APBA OFFSHORE PRODUCTIONS, INC.** and    :   <u>MEMORANDUM OPINION</u>
**Michael D. Allweiss**,                            <u>AND ORDER</u>
                                              :
                    Defendants.
----------------------------------------------------------------x

HAIGHT, D.J.

The defendants in this diversity action, APBA Offshore Productions, Inc. ("Offshore") and Michael D. Allweiss, move pursuant to Fed.R.Civ.P. 60(b) to vacate the judgment previously entered against them and in favor of plaintiff Network Enterprises, Inc. ("Network"). Network opposes this motion.

## I. INTRODUCTION

Familiarity is assumed with the prior opinions of this Court and the Court of Appeals. For present purposes, it is sufficient to say that following a bench trial, this Court held that Offshore had breached a written contract with plaintiff to purchase time from and exhibit programs on plaintiff's cable television network. The Court also pierced Offshore's corporate veil and held Allweiss personally liable for the damages resulting from Offshore's breach. 427 F.Supp.2d 463 (S.D.N.Y. 2006). On October 6, 2004, the Clerk of the Court entered a judgment in the amount of $572,350.92 in favor of Network and against Offshore and Allweiss, jointly and severally. Defendants moved under Rule 60(b) for relief from the judgment. The motion was

1

held in abeyance pending defendants' direct appeal. The Second Circuit affirmed this Court's opinion and judgment in all respects. 264 Fed.Appx. 36 (2d Cir. 2008). Defendants now renew their Rule 60(b) motion for relief from the judgment against them. They rely upon Rule 60(b)(3), contending that Network obtained the judgment by fraud; and upon Rule 60(b)(4), contending that the judgment is void for lack of this Court's personal jurisdiction over them. I consider these contentions in turn.

## II. DISCUSSION

### A. Fraud

Defendants' fraud theory depends entirely upon the handwritten initials "MTV" appearing on a certified copy of this Court's judgment that was recorded in a Florida court. The record on this motion establishes the following facts.

During the trial in this Court, plaintiff Network was represented by the New York firm of Gage Spencer & Fleming LLP ("the Gage firm"). On October 6, 2004, the Clerk of this Court entered the judgment against the two defendants. The Gage firm retained the Florida firm of Kirkpatrick & Lockhart Nicholson Graham LLP ("K&L") to record this Court's judgment with the Clerk of the Pinellas County, Florida Circuit Court. Network sought the recording of the judgment in Florida in order to execute it against the defendants. Allweiss is a resident of Florida.

Michael C. Marsh, a partner of K&L, undertook to record this Court's judgment with the Pinellas County Clerk. K&L "received a copy of the Judgment with the term 'MTV' handwritten in the case caption, next to the name 'Network Enterprises, Inc.'" Corrected Affidavit of Michael C. Marsh ("Marsh Aff.") at ¶ 8. The name "Network Enterprises, Inc." on

the judgment Marsh received was typed and appeared as it does in the above caption. Marsh, whose firm had not represented Network during the trial, knew nothing about what these handwritten initials might signify, and attached no importance to them. The brief for Network on this motion, written by the Gage firm, says that "MTVN internal counsel provided K&L with a copy of the Judgment" for the purpose of recording and enforcement; "[a]t the time of that transmission to Florida counsel, the name 'MTV' had been handwritten on that copy of the Judgment on top of and next to the typewritten Network Enterprises, Inc. in the document's case caption," but "[w]e have not been able to ascertain who did so." Brief at 2.

In point of fact, "MTVN" is the abbreviation for "MTV Networks," a corporate division of Viacom. Viacom is "a multi-faceted entertainment company organized into several operating divisions. . . . MTVN consists of a number of media businesses operated through a collection of direct and indirect Viacom subsidiaries. Network is one such subsidiary. Viacom acquired Network when it merged with CBS Corporation in 2000. When the merger was consummated, Network and its associated TNN business were brought under the MTVN umbrella." Affidavit of Clara Kim, vice-president and general counsel of the television programming service now known as "Spike" ("Kim Affid.") at ¶ 3. Kim explains that Spike was formerly called The National Network, and before that The Nashville Network or "TNN." At all pertinent times, Network was and still is "an active Tennessee corporation associated with" TNN and its successors in name. *Id.* at ¶ 2.

I return to the recording of the judgment. Marsh of K&L, knowing nothing of these corporate relationships and charged only with recording this Court's judgment in Florida, needed for that purpose a copy of the judgment certified by the Clerk of this Court. Marsh "provided the

3

Southern District Clerk with a copy of the Judgment with the handwritten term," with the understanding that "the Southern District Clerk should have then retrieved the original Judgment from the Court files, and certified a copy of the original Judgment." Marsh Affid. at ¶ 10. That was an entirely reasonable expectation on Marsh's part. It is just what the Clerk should have done. Had he done so, he would have observed that the handwritten letters "MTV" did not appear on the original. But the Clerk did not do this. He simply certified the copy of the judgment with the MTV initials appearing on it and returned it to Marsh. Marsh, all unsuspecting, on November 7, 2006 presented that certified copy to the Clerk of the Circuit Court in Pinellas County for recording.

On December 12, 2006, as the result of litigation steps by defendants that I need not recount, Marsh became aware of what he refers to as a "scrivener's error" (the MTV initials) on the certified copy of this Court's judgment. Marsh Affid. at ¶¶ 14-16. "The next day," K&L "contacted the Southern District Clerk to obtain a second certified copy of the Judgment," and "specifically requested that the Southern District Clerk certify a copy of the original in the Court's file. On December 13, K&L received the second certified copy of the Judgment, which does not contain the handwritten notation, 'MTV.'" *Id.* at ¶¶ 17-18. K&L substituted that copy for the first one.

From these undramatic facts, the defendants spin an unpersuasive tale of corporate villainy, deception and fraud. Their theory proceeds from the provision in Fed.R.Civ.P. 17(a) that "[e]very action shall be prosecuted in the name of the real party in interest." Defendants assert Viacom was the real party in interest with respect to the litigated claims against defendants, and accordingly the judgment in Network's name must be vacated. The game is

given away, defendants say, by the handwritten "MTV" initials on the copy of the judgment sent to K&L for recording. Allweiss places this interpretation upon those letters in his Supplemental Affidavit at ¶¶ 6-8:

> Plaintiff's counsel, moreover, admitted recently that Viacom, Inc., a Delaware corporation ("Viacom"), was the real party in interest and thus would have been the proper plaintiff in this case not Network, when he inadvertently disclosed that he sent the judgment to Viacom for recording and execution. Viacom leaves no doubt that it considers itself to be the real party in interest and true owner of the actual final judgment as well. After receiving the judgment from Plaintiff's counsel Viacom, however, unlawfully inserted the term "MTV" in front of the name Network Enterprises, Inc. in the case caption (the "Altered Judgment.").

Defendants' brief expands upon this theory at unnumbered pages 3-7:

> Newly discovered evidence shows that Plaintiff procured the judgment by defrauding the Court and Defendants. That evidence, which Plaintiff deliberately concealed throughout these proceedings, proves that Viacom, Inc. ("Viacom") and its business unit known as MTV Networks ("MTVN") rather than Network was the true owner/operator of TNN (n/k/a Spike TV), during the subject 2001 APBA Offshore programming negotiations which ultimately formed the basis of the Defendants' alleged liability in this case. As such, Viacom was the real party in interest and thus the proper plaintiff in this case. . . . Network initiated this diversity case against [Offshore] alleging that the corporate defendant breached a written contract to purchase time from and exhibit APBA Offshore power boat racing programs in 20001 on a cable network, then known as TNN. . . . From the outset of these proceedings Network represented that it was the owner/operator of TNN at all material times. Recently, Plaintiff's counsel tacitly admitted that Network was neither the real party in interest nor, therefore, the proper plaintiff with respect to the purported type II preliminary agreement underpinning the Final Judgment when he inadvertently disclosed that he sent the judgment to Viacom for recording and execution. From there Plaintiff's house of deception began to crumble rather quickly. After receiving the judgment

5

>from Plaintiff's counsel, Viacom unlawfully inserted the term
>"MTV" in front of the name Network Enterprises, Inc. in the case
>caption (the "Altered Judgment") and recorded it in the Pinellas
>County, Florida public records as an official judgment of this
>Court. In doing so Viacom caused these documents to bear a false
>case style, and filed a fraudulent affidavit in an action styled <u>MTV
>Netwrok Enterprises, Inc. v. APBA Offshore Productions, Inc. And
>Michael D. Allweiss.</u> Defendants did not learn of this fraud until
>the Pinellas Court Clerk of Circuit [*sic*] delivered a copy of the
>Altered Judgment to Allweiss' residence. While Viacom's actions
>leave no doubt that it considers itself to be the real party in interest
>and true owner of the actual final judgment, had Viacom not
>chosen a different lawyer to record and execute the judgment its
>deception would have remained hidden.

If one follows this discussion correctly, defendants contend that "plaintiff's counsel" (not identified) "tacitly admitted" that Network was not the real party in interest when Florida counsel was retained to record a copy of the judgment upon which someone in the corporate chain had written letters "MTV"; Viacom "unlawfully" inserted those letters; Viacom's use of that "false case style" constituted a fraud upon the defendants and the Court; and Viacom's fraudulent actions "leave no doubt that it considers itself to be the real party in interest," with the result that Rule 17(a) mandates vacatur of the judgment.

This argument reads far more into these handwritten letters than they can reasonably sustain. While the Gage firm's brief acknowledges that "MTVN internal counsel" sent K&L, plaintiff's Florida counsel, the copy of the judgment bearing those letters, it is not known who added them to the typed caption or for what purpose. In any event they are insufficient, standing alone, to constitute an admission, tacit or otherwise, that Network was not the real party in interest. The evidence points the other way. Network was the television programming corporation named with Offshore as a party to the 2000 and 2001 agreements in suit. At those

times Network was an active Tennessee corporation, and remains so today, facts established without contradiction by the Kim affidavit. Her affidavit also shows that when Viacom merged with CBS in 2000, "Network and its associated TNN business were brought under the MTVN umbrella," but that is unremarkable in corporate mergers of that size, and does not operate to divest Network, a separate company, of its status as the real party in interest of a claim arising out of an agreement entered into in its own name before the merger.

Quite apart from these considerations of corporate structure, there is nothing in the evidence or defendants' interpretation of it to suggest that Viacom or anyone else was engaged in perpetrating a fraud, on defendants or on the Court (a proposition that defendants would have to prove by clear and convincing evidence). The "MTV" notation on the first certified copy of the judgment was, as K&L attorney Marsh correctly states, a "scrivener's error," which Marsh had the Clerk of this Court correct as soon as he became aware of it. While the identity of the scrivener is unknown, there is no discernible fraudulent purpose that his or her error would serve. Network had succeeded on the trial and recovered a judgment. Its efforts to enforce that judgment against the defendants were entirely legitimate. As defendants' brief recognizes at (unnumbered) page 4, scienter is a necessary element of a claim for fraud. Fraudulent intent cannot reasonably be inferred from the undisputed facts in the case.

The lack of substance in defendants' fraud theory is further demonstrated by *State Street Bank and Trust Company v. Inversiones Errazuriz Limitada*, 374 F.3d 158 (2d Cir. 2004), where the defendants, seeking Rule 60(b)(3) relief from an adverse money judgment, also fastened upon a particular document as evidence of the plaintiff's fraud upon defendants and the trial court. The district court denied defendants' motion. The Second Circuit affirmed. It said of Rule

60(b)(3):

> To prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case. These same principles apply when a movant seeks to set aside a judgment on the basis of fraud on the court. Fraud on the court must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision, preventing the opposing party from fully and fairly presenting its case.

374 F.3d at 176 (citations and internal quotation marks omitted). In the case at bar, it cannot possibly be said that the circumstances attending the addition of the MTV letters to the copy of the judgment, whatever they nay be, prevented defendants from fully and fairly presenting their case during the bench trial resulting in that judgment. One senses in defendants' submissions a lingering regret that they agreed to a bench trial on a stipulated record, but it is too late for that.

In short, there is no substance to defendants' contentions that the judgment must be set aside under Rule 60(b)(3) for fraud.[1]

**B.   Personal Jurisdiction**

Alternatively, defendants move to vacate the judgment under Rule 60(b)(4) on the ground that the Court lacks personal jurisdiction over them. Defendants did not make that argument on direct appeal. Assuming without deciding that they have not waived it, the contention is without merit.

---

[1] The discussion in text also sets forth the Court's conclusion that Network was at all pertinent times the real party in interest for Rule 17(a) purposes. Even if that were not so, and under the intercorporate structure Viacom should be regarded as the real party in interest, it would avail defendants nothing, since Rule 17(a) would allow Viacom to ratify the commencement of the action by Network, a ratification that would relate back to the time of filing the complaint.

This Court considered the question of personal jurisdiction in an opinion reported at 2002 WL 31050846 (S.D.N.Y. Sept. 12, 2002). Plaintiff had moved to amend its complaint to add Allweiss and another corporation as additional defendants. Offshore opposed the amendment to add Allweiss on the ground of futility, contending that plaintiff would not be able to establish personal jurisdiction over Allweiss, a Florida domiciliary. I allowed the amendment, reasoning that the agreement between Network and Offshore contained a New York forum selection clause which would be binding upon Allweiss if Network could prove, as the proposed amended complaint alleged, that Allweiss was the alter ego of Offshore. 2002 WL 31050846, at *3. Network made that proof at trial and the resulting judgment is against both Offshore and Allweiss.

This Court concluded after trial that Network and Offshore entered into a binding Type II preliminary agreement. The Second Circuit affirmed that conclusion: "We agree with the district court that these factors indicate the existence of a binding Type II agreement between Network and Productions." 264 Fed.Appx. at 38.[2] That agreement, the Court of Appeals held, "imposed the obligation to negotiate in good faith within its general framework toward the contractual goal it contemplated." *Id.* at 39.

Defendants' present jurisdictional contention focuses upon Conclusion of Law No. 4 in my opinion deciding the bench trial, in which I said: "Network is precluded as a matter of law from claiming that Productions entered into a final, fully executed formal agreement for 2001 programming. The Renewal option contemplated further negotiations with respect to the dates

---

[2] "Productions" is the name for Offshore that the Second Circuit used in its opinion (as in fact I did, in the opinion appealed from).

9

and times of the 2001 telecasts." 427 F.Supp.2d at 479. Defendants argue from this that if there was no " final, fully executed formal agreement," there could be no New York forum selection clause, and accordingly no basis for this Court's personal jurisdiction over defendants. I do not agree. A binding Type II preliminary agreement creates, to again quote the Second Circuit, "the general framework toward the contractual goal it contemplated." A forum selection clause is a vital part of a contractual framework. It lies at the heart of the creation of the parties' legal rights and obligations. The effect of a Type II preliminary agreement is to bind the parties to that framework, even if a final, fully executed formal agreement was not signed; indeed, if such an agreement had been signed, the concept of such a preliminary agreement would have no office to perform. In this case, the contractual goal the parties contemplated included an agreement that New York was the forum where disputes would be resolved. I conclude that the forum selection clause was binding upon the parties through the vehicle of their Type II preliminary agreement. Consequently, I adhere to my conclusion that Offshore (and Allweiss, its alter ego) were subject to the Court's personal jurisdiction.[3]

---

[3] As an alternative basis for New York personal jurisdiction, Network points to evidence adduced on the present motion that Allweiss had pertinent contacts in New York. Ex. D. to Allweiss's Supplemental Affidavit is a press release dated September 25, 2000, which recited that "TNN president David Hall, who survived the shakeup following Viacom's merger with CBS in June, resigned last week. MTV officials said Hall, a longtime CBS Cable veteran, chose not to relocate to New York." The company "named Nickelodeon veteran Diane Robina as TNN's new general manager," presumably stationed in New York. Allweiss contacted Diane Robina during the course of the exchanges giving rise to the instant action. This is evidenced by a letter dated September 28, 2001 Allweiss sent Network's attorney, Gage, stating: "Additionally, I called Ms. Rubina [*sic*] on numerous occasions to get answers to our questions and concerns and she only returned my first call." Allweiss complained in his deposition that "Diane Rubina wasn't calling me back." Tr. 211. But I need not decide whether these New York contacts, coming late in the game, are sufficient to subject Allweiss to jurisdiction here. That jurisdiction exists, for the reasons stated in text.

## III. CONCLUSION

For the foregoing reasons, the defendants' motion for relief from the judgment entered against them is denied in all respects.

It is SO ORDERED.

Dated:  New York, New York
        January 9, 2009

```
                                     /s/ Charles S. Haight, Jr.
                                     ------------------------------------
                                     CHARLES S. HAIGHT, JR.
                                     Senior United States District Judge
```